**Dunlap-Davenport v. Villas at Tree Tops & Fairway**

---

*David B. Sherman*, for plaintiffs.
*Hugh M. Emory*, for defendants.

WILLIAMSON, *J.*, April 28, 2014—This matter comes before us on a motion for judgment on the pleadings filed by The Villas at Treetops & Fairway, Fernwood Resort, Fernwood Resorts Group, Inc., Delaware River Highlands, Inc., and Bushkill Group, Inc. (hereafter "defendants") on March 5, 2014. On April 4, 2014, Chantay Dunlap-Davenport and Harold Farrington, h/w (collectively hereafter "plaintiffs") filed a response to the motion for judgment on the pleadings. In the motion, defendants argue that by virtue of Ms. Dunlap-Davenport signing a document at defendants' request entitled "Fernwood Hotel & Resort Snowtubing Acknowledgment of Risks and agreement not to sue this is a contract — read It," (hereafter "release"), which was attached to the defendants' answer, Ms. Dunlap-Davenport has released defendants from liability for her accident. Further, defendants argue that Mr. Farrington's loss of consortium claim is also released by virtue of signing the release. Therefore, defendants assert that judgment on the pleadings should be granted in their favor in accordance with Pa. R.C.P. 1034 because the pleadings have established no material facts are in dispute, and that they are clearly entitled to judgment as a

matter of law.

The accident in question took place on February 14, 2011.[2] Following several preliminary pleadings, plaintiffs filed a second amended complaint on August 1, 2013. Defendants filed an answer and new matter to plaintiffs' second amended complaint on August 8, 2013. Plaintiffs then filed a reply to defendants' new matter on September 23, 2013, generally denying all allegations as conclusions of law. On March 5, 2014, defendants filed the instant motion for judgment on the pleadings along with an accompanying brief in support thereof. On April 4, 2014, plaintiffs filed a response to defendants' motion. Defendants filed a reply brief to plaintiffs' response on April 7, 2014. The parties stipulated that the motion for judgment on the pleadings would be submitted to this court on their briefs. The pleadings are now closed and we are ready to dispose of defendants' motion for judgment on the pleadings.

## DISCUSSION

Motions for judgment on the pleadings are governed by the Pennsylvania Rules of Civil Procedure. Rule 1034 states:

(a) After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings.

(b) The court shall enter such judgment or order as shall

---

2. We note that in paragraph 10 of plaintiffs' second amended complaint, the date of the accident is stated as February 14, 2012. However, in viewing subsequent pleadings submitted to this court by both parties, and looking at the release attached as "exhibit A" to defendants' motion for judgment on the pleadings, we believe the date of the accident in question to be February 14, 2011.

be proper on the pleadings.

In ruling on a motion for judgment on the pleadings, the court must consider all of the pleadings and responsive pleadings filed by the moving and non-moving parties, including the complaint, answer, new matter, and reply to new matter. *Herman v. Stern*, 213 A.2d 594 (Pa.1965). The underlying purpose of a motion for judgment on the pleadings is to allow the court to conduct an overall examination of the legal sufficiency of the pleadings in order to determine if judgment should be entered prior to trial. *Bensalem Township School Dist. v. Commonwealth*, 544 A.2d 1318 (Pa. 1988). The standard of review in such a motion is identical to that of a demurrer. *Id.* A demurrer may be sustained only if it is clear on the face of the pleading that the law will not provide or permit the recovery sought. *Morgan v. McPhail*, 672 A.2d 1359 (Pa. Super. 1996). If there is any doubt, it should be resolved by overruling the demurrer. *Mellon Bank N.A. v. Fabinyi*, 650 A.2d 895 (Pa. Super. 1994).

Plaintiffs argue that, even though Ms. Dunlap-Davenport signed the Release on February 14, 2011, she is still able to bring a claim for personal injuries under Pennsylvania law. Plaintiffs take the position that the exculpatory clause contained in the release is unenforceable and invalid. Plaintiffs assert the release is extremely small with all writing listed on a single page. Further, plaintiffs claim that no evidence has been presented which shows the plaintiffs read and understood the release and intended to in fact release the defendants from all liability arising out of the snowtubing activity. Moreover, plaintiffs stress that the exculpatory clause in the release violates Pennsylvania public policy, which precludes such clauses from covering reckless conduct.

In support of their motion for judgment on the pleadings, defendants argue that based on the clear language contained in the release, and applying the principles of law as adopted in factually similar cases, that they are entitled to judgment on the pleadings. To support this position, defendants state the plaintiff admits signing the release that was attached to defendants' answer and new matter. The defendants argue the release is enforceable as it is sufficiently clear and specific to establish the intent of the document. Defendants assert that the release agreement is between private parties and affects the plaintiffs' rights with respect to a recreational activity. Further, defendants claim that the release in no way implicates or affects the plaintiffs' well-being, nor was the plaintiff under any compulsion whatsoever to go snowtubing. Finally, defendants argue that the release does not offend public policy considerations, and by signing the release, Ms. Dunlap-Davenport not only assumed the risks associated with snowtubing, but also expressly agreed not to sue defendants for injuries sustained while participating in the activity.

We agree with the positions set forth by the defendants and for the following reasons grant defendants' motion for judgment on the pleadings.

Release called into question. The defendants plead as a defense in their new matter, the fact that plaintiff Chantay Dunlap-Davenport, signed the release. The defendants attached the release as "exhibit A" to their answer with new matter. The plaintiffs filed a reply to new matter that generally denied defendants' new matter as conclusions of law. The plaintiffs' general denial as to conclusions of law, fails to specifically deny that she signed the release. As such, plaintiff admits that she signed the release as alleged by

the defendants under Pa. R.C.P. 1029(b) (which states that "[a]verments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication." Pa. R.C.P. 1029(b). Therefore, we must accept the allegation in defendant's new matter that plaintiff signed the release attached to the answer with new matter before she suffered any injury. The next step is to determine the effect, if any, of signing the release.

The release states in bold, capital font across the top: "THIS IS A CONTRACT — READ IT." The release contains the following language, again in bold, capital font, under the heading "AGREEMENT NOT TO SUE:

IN CONSIDERATION OF BEING ALLOWED TO PARTICIPATE IN SNOWTUBING AT FERNWOOD HOTEL & RESORT, I AGREE I WILL NOT SUE BUSHKILL GROUP INC., HARA CORPORATION, HRP CORP., TREE TOPS, INC. AND THEIR OFFICERS, DIRECTORS, AGENTS, SERVANTS AND EMPLOYEES (HEREINAFTER REFERRED TO COLLECTIVELY AS "FERNWOOD") AND WILL RELEASE FERNWOOD FROM ANY AND ALL LIABILITY IF I OR ANY MEMBER OF MY FAMILY IS INJURED WHILE USING ANY OF THE FERNWOOD FACILITIES OR WHILE BEING PRESENT AT THE FACILITIES, EVEN IF I CONTEND THAT SUCH INJURIES ARE THE RESULT OF NEGLIGENCE, RECKLESSNESS, OR ANY OTHER IMPROPER CONDUCT ON THE PART OF FERNWOOD. I FURTHER AGREE THAT I WILL INDEMNIFY AND HOLD HARMLESS FERNWOOD FROM ANY LOSS, LIABILITY, DAMAGE OR COST OF ANY KIND THAT MAY OCCUR AS THE RESULT OF ANY INJURY TO

MYSELF, TO ANY MEMBER OF MY FAMILY OR TO ANY PERSON FOR WHOM I AM SIGNING THIS AGREEMENT, EVEN IF IT IS CONTENDED THAT ANY SUCH INJURY WAS CAUSED BY THE NEGLIGENCE, RECKLESSNESS OR OTHER IMPROPER CONDUCT ON THE PART OF FERNWOOD."

The release further goes on to provide an "ACKNOWLEDGMENT OF RISKS" section, which in part reads: "I understand and acknowledge that snowtubing, including the use of lifts, is a dangerous, risk sport and that there are inherent and other risks associated with the sport and that all of these risks can cause serious and even fatal injuries." *Id.*

We recognize that Pennsylvania courts generally disfavor exculpatory provisions in contracts. However, as acknowledged by the Pennsylvania Supreme Court as recently as 2012, such provisions are enforceable where three conditions are met: "First, the clause must not contravene public policy; second, the contract must be between persons concerning their private affairs; and third, each party must be a free bargaining agent so the contract is not one of adhesion."[3] *Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1199 (Pa. 2012) (citing *Employers Liab. Assur. Corp. v. Greenville Business Men's Ass'n*, 224 A.2d 620 (Pa. 1966)).

In making a determination on the first condition, whether the release contravenes public policy, we are instructed that avoidance of a contract on public policy grounds

---

3. A fourth condition had also been previously used by Pennsylvania courts, that being whether the agreement expresses the intent of the parties with the upmost particularity. *See Zimmer v. Mitchell and Ness*, 385 A.2d 437, 439 (Pa. Super. 1978).

requires "a showing of overriding public policy from legal precedents, government practice, or obvious ethical or moral standards." *Id.* (citing *Williams v. GEICO Gov't Employees Ins. Co.*, 32 A.3d 1195 (Pa. 2011)). The court in *Tayar* went on to discuss a 'spectrum' of tortious conduct to be used in evaluating whether a release, such as the one this case, contravenes public policy. Specifically, the court stated that "at one end of the spectrum, exculpatory clauses that release a party from negligence generally are *not* against public policy, and are enforceable provided certain criteria are met." *Id.* at 1200 (emphasis added).[4] The court concluded by stating that "on the other end of the spectrum are releases for intentional conduct." *Id.*

Applying the above principles of law to this case, we first find that the exculpatory clause contained in the Release as applied to the plaintiff does not violate public policy. It is important to note that we recognize the ultimate holding in *Tayar*, that "there is a dominate public policy against allowing exculpatory releases of reckless behavior, which encourages parties to adhere to minimal standards of care and safety." *Id.* at 1203. The release in this case explicitly contains the terms "negligence" and "recklessness" in the "agreement not to sue" portion. However, we reconcile the defendants' use of "recklessness" in the release and the court's holding in *Tayar* by finding that the plaintiff has not alleged a cause of action based on recklessness in the second amended complaint. Paragraph 16 of plaintiffs' second amended complaint only raises a cause of action

---

4. Those certain criteria being "(1) the contract language be strictly construed; (2) the contract must state the intention of the parties with the greatest particularity; (3) the language must be construed against the party seeking immunity; and (4) the burden of establishing immunity rests on the party seeking protection under the clause." *Tayar*, 47 A.3d at 1208 n.8.

based on the alleged "negligence and carelessness of defendants."[5] Therefore, because plaintiffs have not alleged recklessness as a cause of action, and cannot then challenge the use of the term "recklessness" in the release, the release as applied to plaintiffs' claim of negligence does not violate public policy.

In regard to the remaining conditions which must be met for the release to be enforceable, we find the following. The release was between Ms. Dunlap-Davenport and defendants, and concerned the use of and participation in snowtubing activities at Fernwood Hotel & Resort. Therefore, it was a contract between persons concerning and relating to their private affairs. Furthermore, there are no allegations in any of the pleadings that plaintiff was forced to agree to the specific terms of the release. If plaintiff did not agree to the terms contained therein, she had the ability to go snowtubing somewhere else, or simply not at all. Snowtubing is not an essential life activity, but rather, a voluntary recreational sport which plaintiff chose to participate. Moreover, we find the language of the release does clearly express the intent of the parties with precision and particularity. Relevant portions of the release were expressed in such a manner which would draw the attention of a reasonable person entering into such an agreement. Additionally, the language of the release itself is such that a careful and thorough reading would substantially apprise a reasonable person of the risks and consequences associated with snowtubing. Therefore the release, for all

---

5. Moreover, if a cause of action based on recklessness was alleged by plaintiffs, and the "recklessness" language contained in the release was determined to be violative of public policy, further language contained in the agreement not to sue portion of the release would allow this court to give full force and effect to the otherwise lawful portions of the release if we so determined.

intents and purposes, was not a contract of adhesion as plaintiff was a freely bargaining participant who entered into the contract by her own volition, and it expressed the intent of the parties with upmost particularity.

Finally, we find no merit in plaintiff's contention that the release is invalid due to small writing contained on a single page. A regular size copy of the release was attached to defendants' answer with new matter and it was neither difficult to read nor to understand. Also, one of the risks of snowtubing clearly listed on the release is "the use of the snowtubing lift or tow, including falling out of a tube, coasting backwards, becoming entangled with equipment and other risks.

Because the release does not contravene public policy, was a contract between two private parties concerning their private affairs, was not a contract of adhesion, and expressed the clear intent of the parties with upmost particularity, we find the exculpatory provision and the release itself to be a valid contractual agreement between plaintiffs and defendants. For those reasons, we grant defendants' motion for judgment on the pleadings with respect to count I of plaintiff's second amended complaint.

We also dismiss Mr. Farrington's loss of consortium claim in count II of plaintiffs' second amended complaint, as it is dependent upon Ms. Dunlap-Davenport's claim in count I. In dismissing count II, we recognize a long line of Pennsylvania case law which finds that "an action for loss of consortium is derivative." *Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. 1985); *Little v. Jarvis*, 280 A.2d 617 (Pa. Super. 1971); *Elser v. Union Paving Co.*, 74 A.2d 529 (Pa. Super. 1950); *Winner v. Oakland Township*, 27 A. 1110 (Pa.1893). The appellate courts of Pennsylvania have held that "because a loss of consortium

action has been viewed as derivative its success in this Commonwealth has always been dependent upon the injured spouse's right to recover." *Id.* at 554. Our Superior Court has also held that the "consortium plaintiff...has suffered no direct injury. [His/Her] right to recover is derived, both in a literal and legal sense, from the injury suffered by [his/her] spouse." *Barchfeld v. Nunley by Nunley*, 577 A.2d 910, 912 (Pa. Super. 1990) (citing *Scattaregia*, 495 A.2d at 553-554) (quoting *Maidman v. Stagg*, 82 A.D.2d 299, 304 (N.Y. App. Div. 1981)). However, it is also recognized that "a loss of consortium claim is separate and independent from the personal injury claim where the injured spouse has settled the case or for some reason the merits of the directly injured spouse's claim have not been reached." *Id.* In dismissing count I of the second amended complaint, we are making a decision on the merits of Ms. Dunlap-Davenport's claim. Therefore, in applying the above considerations of law to the instant case, it follows that count II of the complaint be dismissed.

In conclusion, for the reasons stated above, we find it to be clear on the face of the pleadings in this matter that the law does not permit recovery for the plaintiffs, and defendants are entitled to the requested relief. As such, judgment on the pleadings is appropriate at this time, and we enter the following order.

## ORDER

And now, this 28th day of April, 2014, upon consideration of defendants' motion for judgment on the pleadings, the same is granted. Counts I and II of plaintiffs' second amended complaint are dismissed.