J-E03010-15

2016 PA Super 11

| | |
|---|---|
| MELINDA HINKAL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| GAVIN PARDOE & GOLD'S GYM, INC., AND GOLD'S GYM INTERNATIONAL, INC. AND TRT HOLDINGS, INC. | |
| Appellees | No. 165 MDA 2014 |

Appeal from the Order Entered January 7, 2014
In the Court of Common Pleas of the 17th Judicial District,
Union County Branch,
Civil Division at No: 12-0375

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J., SHOGAN, J., LAZARUS, J., OTT, J., STABILE. J., and JENKINS, J.

OPINION BY STABILE, J.:                    **FILED JANUARY 22, 2016**

Melinda Hinkal ("Appellant") appeals from the January 7, 2014 order entered in the Court of Common Pleas of Union County granting summary judgment in favor of Gavin Pardoe ("Pardoe"), Gold's Gym, Inc. ("Gold's Gym"), Gold's Gym International, Inc. and TRT holdings, Inc. (collectively "Appellees"). Following review, we affirm.

In this appeal, Appellant challenges whether agreements she signed for membership at Gold's Gym released Appellees from liability for injuries she alleged she sustained while under the direction of Pardoe, a personal trainer, at Gold's Gym. In her Second Amended Complaint, Appellant asserted claims of negligence against Pardoe, and negligence against Gold's

Gym premised upon *respondeat superior* liability. In its 1925(a) opinion, the

trial court explained:

> [Appellant] alleges she sustained a serious neck injury while using a piece of exercise equipment under [personal trainer] Pardoe's direction. [Appellant] alleges that she suffered a rupture of the C5 disc in her neck requiring two separate surgeries. [Appellant] alleges that Pardoe's negligence included, *inter alia*, putting too much weight on the piece of equipment that injured [Appellant] and by instructing [Appellant] to continue the workout without recognizing that [Appellant] had sustained a serious injury. [Appellant's] allegations of negligence against the remaining [Appellees] are based upon vicarious liability for Pardoe's negligence as well as the negligence of unidentified employees, agents and servants.
>
> [Appellees] have filed a Motion for Summary Judgment requesting that we dismiss all [Appellant's] claims against all [Appellees] with prejudice. In support of their motion, [Appellees] aver that as a member of [Gold's Gym], [Appellant] signed a Guest Courtesy Card, a Membership Agreement and a Personal Training Agreement with Pardoe. [Appellees] assert that these documents contain legally valid "waiver of liability" provisions, which in turn, bar [Appellant's] claims against all [Appellees].

Trial Court Opinion ("T.C.O."), 1/7/14, at 1-2.

The trial court concluded that the waiver language set forth in Gold's

Membership Agreement was valid and enforceable. T.C.O., 1/7/14, at 10.

The trial court determined:

> By signing the Membership Agreement, [Appellant] executed a release and assumed the risk of any and all injuries sustained by virtue of her use of the exercise equipment at the [gym]. Thus, [Appellees] are entitled to the entry of judgment in their favor on the basis of the exculpatory release language set forth in the Membership Agreement and scrutinized and analyzed at length herein. There are simply no genuine issues of material fact to warrant a jury trial in this action.

Therefore, [Appellees'] Motion for Summary judgment is granted with prejudice . . . .

*Id.*

Appellant filed a timely appeal to this Court. A divided panel reversed the trial court's grant of summary judgment. Following the grant of reargument, the case now comes before this Court *en banc.*

In her Amended Brief filed with this Court, Appellant presents three issues for our consideration:

1. Whether the Guest Card signed by the Appellant covering the six day trial period had expired before the Appellant's injury occurred[?]

2. Whether the Waiver on the back page of the Membership Agreement signed by the Appellant is valid and enforceable[?]

3. Whether the Waiver encompasses Reckless Conduct?

Appellant's Amended Brief at 4.

Our standard and scope of review from the grant of summary judgment are as follows:

The overarching question of whether summary judgment is appropriate is a question of law, and thus our standard of review is *de novo* and the scope of review is plenary. ***O'Donoghue v. Laurel Sav. Ass'n***, 556 Pa. 349, 728 A.2d 914, 916 (1999). Summary judgment may be entered only in those cases where the record demonstrates that there remain no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. ***Dean v. Commonwealth, Dep't of Transp.***, 561 Pa. 503, 751 A.2d 1130, 1132 (2000).

***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1182 (Pa. 2010).

With respect to Appellant's first issue, questioning whether the guest card covering Appellant's six-day trial period expired before the Appellant's injury occurred, we observe that Appellant did not address this issue in the Argument section of her brief.  We therefore, may find this issue waived. Pa.R.A.P. 2119; **Harvilla v. Delcamp**, 555 A.2d 763, 764, n.1 (Pa. 1989). Nonetheless, even if this issue were not considered waived, the guest card is of no consequence in this case.  Appellant received the guest card on June 20, 2010 when she first visited Gold's Gym.  At the conclusion of the six-day guest period, Appellant signed a membership agreement that included the provisions in effect on August 24, 2010, the date Appellant alleges she was injured due to Appellees' negligence.  It was those provisions, not any guest card, which govern the relevant time here, and upon which the trial court granted summary judgment.

In her second issue, Appellant questions whether the waiver on the back page of her membership agreement is valid and enforceable.  The language on the back page of the agreement reads in pertinent part as follows:

> **WAIVER OF LIABILITY; ASSUMPTION OF RISK:**  Member acknowledges that the use of Gold's Gym's facilities, equipment, services and programs involves an inherent risk of personal injury to Member . . . .  Member voluntarily agrees to assume all risks of personal injury to Member . . . and waives any and all claims or actions that Member may have against Gold's Gym, any of its subsidiaries or other affiliates and any of their respective officers, directors, employees, agents, successors and assigns for any such personal injury (and no such person shall be liable to Member . . . for any such injury), including, without

limitation (i) injuries arising from use of any exercise equipment, machines and tanning booths, (ii) injuries arising from participation in supervised or unsupervised activities and programs in exercise rooms . . . or other areas of Gold's Gym, (iii) injuries or medical disorders resulting from exercising at any Gold's Gym, including heart attacks, strokes, heat stress, sprains, broken bones and torn or damaged muscles, ligaments, or tendons and (iv) accidental injuries within any Gold's Gym facilities . . . ."

Appellees' Motion for Summary Judgment, 8/16/13, at Exhibit C. The Gold's Gym Membership Agreement signed by Appellant further instructs:

Do not sign this Agreement until you have read both sides. The terms on each side of this form are a part of this Agreement. Member is entitled to a completely filled in copy of this Agreement. By signing this Agreement, Member acknowledges that (A) This Agreement is a contract that will become legally binding upon its acceptance by Gold's Gym, (B) Member has examined the gym facilities and accepts them in the present condition, (C) Gold's Gym makes no representations or warranties to Member, either expressed or implied, except to the extent expressly set forth in this Agreement and (D) The effective date of membership hereunder shall be within six months after the date of Member's signature below. This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes any and all prior agreements, whether written or oral, with respect to such matter.

*Id.* The signature line follows immediately and the words "Notice: See other side for important information" appear in bold typeface below the signature line. *Id.*

In its thorough and well-reasoned opinion, the trial court reviewed the language of the waiver and conducted a review of case law addressing exculpatory clauses, recognizing:

- 5 -

"It is generally accepted that an exculpatory clause is valid where three conditions are met. First the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion." [**Chepkevich**, 2 A.3d at 1189] (citations omitted). ". . . [O]nce an exculpatory clause is determined to be valid, it will, nevertheless, still be unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. In interpreting such clauses we listed as guiding standards that: 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt, by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clauses." **Id.**, quoting **Dilks v. Flohr Chevrolet**, 192 A.2d 682, 687 (Pa. 1963).

Moreover, ". . . [c]ontracts against liability, although not favored by courts, violate public policy only when they involve a matter of interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carrier, and hospitals." **Seaton v. E. Windsor Speedway, Inc.**, 582 A.2d 1380, 1382 (Pa. Super. 1990).

T.C.O., 1/7/14, at 4-5.[1]

_____

[1] The trial court noted that the three-pronged exculpatory clause test applied in **Chepkevich** has been identified as the "**Topp Copy/Employers Liability** standard" based upon **Topp Copy Products, Inc. v. Singletary**, 626 A.2d 98 (Pa. 1993) and **Employers Liability Assurance Corp. v. Greenville Business Men's Association**, 224 A.2d 620 (Pa. 1966). T.C.O., 1/7/14, at 5 n.4. We shall refer to the standard as the "**Topp Copy/Employers Liability** standard" in this Opinion.

The trial court concluded that the exculpatory language at issue cannot be said to violate public policy because it was an agreement between a private individual and entities, and because it did not address matters of interest to the public or the state. Therefore, the first two prongs of the ***Topps Copy/Employers Liability*** standard were satisfied. ***Id.*** at 5. The trial court further determined that the membership agreement did not constitute a contract of adhesion. ***Id.*** at 6. "[Appellant] was under no compulsion to join Gold's Gym as a member and execute the Membership Agreement. Exercising at a gym with equipment and availing oneself of the expertise of a personal trainer is purely voluntary recreational activity." ***Id.*** at 7. Therefore, the third prong of the ***Topps Copy/Employers Liability*** standard also was satisfied.

Persuaded that all conditions for evaluating the validity of an exculpatory clause were met, the trial court concluded that the "Waiver of Liability; Assumption of Risk" provision of the membership agreement was valid. ***Id.*** The trial court then considered whether the provision spelled out the intention to release Pardoe and Gold's Gym from liability for negligence. The trial court stated:

> [W]e conclude that the provision at issue expressly states with particularity the intention to bar all lawsuits arising out of the inherent risk of personal injury in using exercise equipment and machines and participating in an exercise program. We do not find the language in the waiver to be ambiguous such that we need to construe it against [Appellees]. We conclude that [Appellees] have satisfied their burden of establishing the validity of the waiver provision.

> We note that in response to the summary judgment motion, [Appellant] has objected to the font size and the location of the language in the Membership Agreement. However, [Appellant] testified in her deposition that she did not read the agreement prior to signing the same. As [a] result the font size and location of the language is of no consequence. Moreover, " . . . [i]n the absence of fraud or confidential relationship, the fact that [a party] may have 'skimmed' or 'somewhat read' the subject releases, does not make them any less enforceable." *Seaton v. E. Windsor Speedway*, [582 A.2d 1380 (Pa. Super. 1990)]; *Standard Venetian Blind Co.* [*v. Am. Empire Ins. Co.*, 469 A.3d 563 (Pa. 1968)].

*Id.* at 9-10.

In her brief, Appellant does not contend that the trial court's analysis is legally deficient. Rather, she simply asserts that her claim is not barred by the "exclusion clause" on the back of the membership agreement. Appellant's Amended Brief at 15-20. Her argument does not focus on aspects of validity of exculpatory clauses, such as whether the membership agreement clause contravenes public policy or constitutes a contract of adhesion. Nor does she contend that the language fails to relieve Appellees from liability. Further, Appellant ignores the *Topps Copy/Employers Liability* standard as well as the language in the agreement relieving Appellees from liability. Relying primarily on *Beck-Hummel v. Ski Shawnee, Inc.*, 902 A.2d 1266 (Pa. Super. 2006), Appellant contends the waiver is invalid because the waiver language appeared on the back of the agreement, she never read or was told to read the back of the agreement, and the clause was not "brought home" to her in a way that could suggest

- 8 -

she was aware of the clause and its contents. *Id.* However, as the trial court recognized, Appellant admitted she did not read the agreement prior to signing it. T.C.O., 1/7/14, at 9. She did not allege fraud or a confidential relationship. *Id.* Although she was ostensibly attacking the validity of the waiver, Appellant did not present any basis for finding the waiver provisions invalid or unenforceable. Her failure to read her agreement does not render it either invalid or unenforceable. "The law of Pennsylvania is clear. One who is about to sign a contract has a duty to read that contract first." *Schilachi v. Flying Dutchman Motorcycle Club*, 751 F. Supp. 1169, 1174 (E.D. Pa. 1990) (citations omitted). As this Court has stated:

> It is well established that, in the absence of fraud, the failure to read a contract before signing it is "an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract"; it is considered "supine negligence." *Germantown Sav. Bank v. Talacki,* 441 Pa. Super. 513, 657 A.2d 1285, 1289 (1995) (citing *Standard Venetian Blind Co. v. American Emp. Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 note (1983)).

*In re Estate of Boardman*, 80 A.3d 820, 823 (Pa. Super. 2013).

With an unambiguous directive not to sign the agreement until reading both sides, a clear pronouncement that the terms on both sides of the form are part of the agreement, and a straightforward statement that the agreement constitutes the entire agreement between the parties, the signed Gold's Gym membership agreement cannot be compared in any way to the unread and unsigned disclaimer on a ski facility ticket in *Beck-Hummel*.

*Beck-Hummel* concerned the enforceability of a release provision printed on the back of a tubing ticket purchased at Ski Shawnee, Inc. (Shawnee). Plaintiff's husband had purchased four tubing tickets. Neither the plaintiff nor her husband read the exculpatory language on the tubing tickets and neither of them was informed by any employee of Shawnee that they were entering into a contractual agreement with Shawnee. The release language was printed above a dotted line in the center of the ticket where the ticket presumably was to be folded. Plaintiff fractured her ankle when she ran into a wall in the run-out area. She sued Shawnee for negligence. The issue on appeal was whether the release contained on the tubing ticket was enforceable. The resolution of this issue was dependent upon whether there was a meeting of the minds to establish the existence of a contract.

On appeal to this Court, we concluded there was no agreement as to this unsigned and unread disclaimer. Drawing upon Section 469B of the Restatement (Second) of Torts, we found that for there to be an effective express agreement to assume a risk, it must appear the plaintiff had given assent to the terms of the agreement. In particular, where the agreement was drawn by the defendant, and the plaintiff's conduct was merely that of a recipient of the agreement, it had to appear that the terms of the release were in fact understood and "brought home" to the plaintiff to find that the agreement had been accepted. Shawnee attempted to argue the ticket was so conspicuous that it put plaintiff on notice of the release provision such

that an agreement could be found. In finding that the release on the ticket was not sufficiently conspicuous, we looked to caselaw addressing Article 2 of Pennsylvania's Uniform Commercial Code (PUCC), 13 Pa.C.S.A. § 2101 *et seq.*, relating to enforcement of warranty disclaimers, to determine whether a reasonable person should have noticed the release provision. ***Beck-Hummel***, 902 A.2d at 1274. We were careful to recognize, however, that while Article 2 of the PUCC applied only to the sale of goods, we nonetheless found it useful for providing guidance in that case. ***Id.*** at 1274 n.12. Since neither the plaintiff nor her husband ever read the ticket's language and the language was not so conspicuous as to, without more, put the user/purchaser on notice, we could not conclude as a matter of law that the release on the ticket was enforceable.

The distinguishing factor between ***Beck-Hummel*** and the instant matter that makes resort to ***Beck-Hummel*** inapposite is the nature of the respective agreements. In ***Beck-Hummel,*** the release provision was contained on the face of an entry ticket purchased for use of a ski facility. The ticket did not require a signature or an express acknowledgment that its terms were read and accepted before using the facility. Nothing about the ticket ensured that a purchaser would be aware of its release provision. The purchasers were mere recipients of the document. In short, there was not sufficient evidence to find conclusively that there was a meeting of the minds that part of the consideration for use of the facility was acceptance of

a release provision. In stark contrast, here there is a written, signed and acknowledged agreement between the parties. Not only is the written contract signed by Appellant, but also, as previously stated, the contract contained an unambiguous directive not to sign the agreement until reading both sides, a clear pronouncement that the terms on both sides of the form are part of the agreement, and a straightforward statement that the agreement constitutes the entire agreement between the parties. Accordingly, there is no need here to resort to proof of notice, as in **Beck-Hummel**, to discern if assent to an agreement had been reached.

Appellant also looks to **Beck-Hummel** for its discussion of conspicuity. Appellant's Amended Brief at 18-19. As a general principle, minimum conspicuity standards are not a requirement to establish the formation of a contract. While it is true the legislature has prescribed conspicuity requirements for certain types of contracts,[2] conspicuity *per se* is not an essential element of contract formation. **See** Restatement (Second) of Contracts § 17(1) (a contract requires a bargain in which there is a

---

[2] **See, e.g.,** 13 Pa.C.S.A. § 2316(b) (exclusion of implied warranties of merchantability and fitness to be conspicuous), 73 P.S. § 201-7 (consumer goods or services contract cancellation clause and notice to be minimum ten-point boldface), 73 P.S. § 2163(b) (buyer's right to cancel in health club contract to be boldface and minimum ten-point font), 73 P.S. § 500-201 (home improvement contract to be at least eight-point type), 73 P.S. § 1970.3(c) (motor vehicle disclosure to be boldface and minimum size of ten points), 73 P.S. § 2186(a) (credit services contract to be conspicuous in ten-point bold type), 73 P.S. § 2205 (test of readability in consumer contracts).

manifestation of mutual assent to the exchange and a consideration). Sufficient proof of this exists by virtue of the law recognizing and enforcing oral contracts between parties. Nonetheless, in cases where the existence of a contract, or a meeting of the minds, cannot be determined as a matter of law, conspicuity has been resorted to as a means of proving the existence or lack of a contract. Such was the case in **Beck-Hummel** where there was no signed agreement between the parties. Conspicuity principles were borrowed from the PUCC in aid of determining whether the plaintiff was put on sufficient notice that a release was a part of the *quid pro quo* for use of the ski facility. The existence of a valid written contract, however, cannot be supplanted by imposing undefined conspicuity requirements as essential elements to all contract formations. To do so would substantially alter the landscape of contract formation and allow a properly executed contract to be set aside through one party's failure to do what the law requires: to read the contract before signing.

Here, without reading it, Appellant signed the membership agreement, which included an unambiguous directive not to sign before reading both sides, a clear pronouncement that the terms on both sides of the form are part of the agreement, and a straightforward statement that the agreement constitutes the entire agreement between the parties. Viewing the record in the light most favorable to Appellant, as we are constrained to do, we find no genuine issue as to any material fact or any error in the lower court's

determination that the waiver was valid and enforceable. Appellant is not entitled to relief based on her second issue.

In the third issue set forth in Appellant's amended brief, she questions whether the membership agreement waiver encompasses reckless conduct. She suggests that Pardoe's actions, adding so much weight to a piece of exercise equipment, constituted indifference to the consequences of his actions rising to a level of recklessness outside the purview of the membership agreement waiver. Appellant's Amended Brief at 21-22. Appellees counter that the issue is waived because it was never raised before the trial court, either in response to the motion for summary judgment or at any other time. Appellees' Brief at 23. Further, Appellant did not allege reckless conduct as a basis for liability in her Second Amended Complaint. Appellees' Brief at 25.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Raising the issue in her 1925(b) statement does not cure that defect. "A party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order. A Rule 1925(b) statement of matters complained of on appeal is not a vehicle in which issues not previously asserted may be raised for the first time." ***Glenbrook Leasing Co. v. Beausang***, 839 A.2d 437, 444 (Pa. Super. 2003) (internal citations omitted).

Clearly, Appellant's claims of recklessness are waived, unless the allegations of her pleadings or assertions in opposition to Appellees' summary judgment motion can be read to encompass recklessness. Our review of the pleadings, Appellant's deposition, and her brief in opposition to the motion for summary judgment leads us to conclude recklessness was not raised prior to the filing of Appellant's brief on appeal. All of Appellant's claims are centered on mere negligence.

In **Tayar v. Camelback Ski Corp., Inc.**, 47 A.3d 1190 (Pa. 2012), our Supreme Court explained:

> Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence. In **Fitsko v. Gaughenbaugh**, 363 Pa. 132, 69 A.2d 76 (1949), we cited with approval the Restatement (Second) of Torts definition of "reckless disregard" and its explanation of the distinction between ordinary negligence and recklessness. Specifically, the Restatement (Second) of Torts defines "reckless disregard" as follows:
>
> > The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.
>
> Restatement (Second) of Torts § 500 (1965). The Commentary to this Section emphasizes that "[recklessness] must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent." **Id.,** cmt. a. Further, as relied on in **Fitsko**, the Commentary contrasts negligence and recklessness:

- 15 -

> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. . . . The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

*Id.*, cmt. g.

*Tayar*, 47 A.3d at 1200-01.

Because Appellant did not assert claims of reckless conduct at any time prior to her appeal and because her claims of negligence cannot be read to encompass recklessness, Appellant's third issue does not afford her the right to any relief. Finding no error of law in the trial court's conclusion that there were no genuine issues as to material fact and that Appellees were entitled to judgment as a matter of law, we affirm the grant of summary judgment.

Order affirmed.

P.J. Gantman, P.J.E. Bender, J. Bowes, J. Shogan, J. Ott, and J. Jenkins join this Opinion.

J. Lazarus files a Dissenting Opinion, in which J. Panella joins.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/22/2016</u>