J. S55038/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
DENNIS MOORE, : No. 3119 EDA 2017
:
Appellant :


Appeal from the Judgment of Sentence, August 16, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0006751-2016


BEFORE: OLSON, J., STABILE, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 21, 2018**

Dennis Moore appeals the August 16, 2017 judgment of sentence in

which the Court of Common Pleas of Philadelphia County sentenced him to

serve an aggregate term of life imprisonment without the possibility of

parole for his convictions for first-degree murder, firearms not to be carried

without a license, carrying firearms in public in Philadelphia, and possession

of an instrument of crime.[1] After careful review, we affirm.

The facts, as recounted by the trial court, are as follows:

> At trial, Kenyatta Lyons testified that on August 6,
> 2013, she lived on the 3300 block of Agate Street.
> During the night-time hours, she had gone around
> the corner from her home to a convenience store.
> She returned to Agate Street where she saw
> [appellant], whom she had known for about nine
> years. They chatted for about 10 minutes. She

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, and 907, respectively.

walked the distance of four or five houses toward her home. She turned around and saw [appellant] shoot Julius Fleming about five or six times. She said that the final shot was to Mr. Fleming's head.

Ms. Lyons stated that she did not report the incident to the police because she felt that her life could be in danger. On March 18, 2016, the police approached her near her home and took her to homicide headquarters. She gave a signed statement to the police. She identified photographs of [appellant] and Julius Fleming.

Janice Fioravanti testified that on August 6, 2013, at about 11 p.m., she was inside her home on Agate Street when she heard what sounded like five firecrackers. She went outside and saw a man drive away on a bicycle. She found the body of Julius Fleming. She was taken to homicide headquarters where she gave a written statement and was shown some photographs. She thought that she recognized one photograph, but was not 100 per cent sure that the photograph was that of the man on the bicycle.

Edward Jaje testified that on August 6, 2013, he was inside his home on the 3300 block of Agate Street, when he heard three shots, followed after a pause by two or three more shots. He looked out the window and saw a man stuffing something into his pants pocket and running to the house next door. He saw the man get on a bicycle and ride away. Mr. Jaje went outside where he saw Janice Fiorvante [sic] and the body of his neighbor, Julius Fleming.

Mr. Jaje gave a statement to police. Because he was afraid of retaliation, Mr. Jaje did not tell police that he had recognized the shooter. Sometime after the shooting, Mr. Jaje moved to another neighborhood. About three years after the shooting, police again interviewed Mr. Jaje, who then identified [appellant] in a photo array. In the course of his testimony, Mr. Jaje became upset. The Court called a recess so that Mr. Jaje could compose himself. The prosecutor

> suggested that the courtroom be cleared. Defense counsel objected.
>
> The Court stated:
>
> > I want to make sure that the courtroom does remain public. But in a situation such as this, I think it would be appropriate for me to clear the courtroom, both sides. So I am going to ask the people on both sides please stay in the hallway. We'll call you back when it's permitted. Thank you.
>
> With the courtroom cleared, Mr. Jaje identified [appellant] as the shooter.
>
> Dr. Albert Chu of the Medical Examiner's office testified that Julius Fleming died from multiple gunshot wounds and that the manner of death was homicide. He said that the decedent had sustained five gunshot wounds—to the forehead, right lower jaw, head, chest and right shoulder.
>
> A document from the Pennsylvania State Police was introduced into evidence certifying that [appellant] was not licensed to carry a firearm in Pennsylvania.
>
> [Appellant's] aunt, Charlese Lee, testified that [appellant] had a "very good" reputation for being a peaceful, nonviolent individual. [Appellant] did not testify.

Trial court opinion, 1/10/18 at 2-5 (citations to record omitted).

On August 24, 2017, following his conviction and sentencing, appellant filed a post-sentence motion and alleged that the verdict was against the weight of the evidence. On August 28, 2017, the trial court denied the motion. On September 26, 2017, appellant filed a notice of appeal. On October 2, 2017, the trial court ordered appellant to file a concise statement

of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a). On October 18, 2017, the trial court issued an amended order that stated the concise statement was due on or before December 19, 2017. Appellant complied with the order on December 18, 2017. On January 10, 2018, the trial court issued its opinion, pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for this court's review:

I.     Is [appellant] entitled to an Arrest of Judgment on all charges where the evidence is not sufficient to sustain the verdict?

II.    Is [appellant] entitled to a new trial where the verdict is not supported by the greater weight of the evidence?

III.   Is [appellant] entitled to a new trial where the [trial c]ourt impermissibly and unconstitutionally and without cause cleared the Courtroom depriving [appellant] of a public trial?

IV.    Is [appellant] entitled to a new trial where the greater weight of the evidence does not support premeditation or a specific intent to kill on the part of [appellant]?

Appellant's brief at 3.

Initially, appellant contends that he must be awarded an arrest of judgment on all charges as the verdict is not supported by sufficient evidence. Specifically, appellant asserts that the Commonwealth failed to establish premeditation necessary for first-degree murder. (Appellant's brief at 7.)

The Commonwealth argues[2] that appellant waived this issue because he did not raise it in his 1925(b) statement. (Commonwealth's brief at 10.) In his Rule 1925(b) statement, appellant claimed that the evidence was insufficient because the Commonwealth failed to prove that he acted with malice. Here, in his brief to this court, appellant asserts that the Commonwealth failed to prove that he acted with the requisite intent. (Appellant's brief at 7.)

Pennsylvania courts have consistently held that for sufficiency of the evidence challenges, an appellant's Rule 1925(b) statement "needs to specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015), quoting *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa.Super. 2008) (citation omitted). Failure to do so results in waiver of the issue on appeal. *Tyack*. Furthermore, the failure to include an issue in the statement of errors complained of on appeal results in a waiver of that issue. *See* Pa.R.A.P. 1925(b)(vii).

Here, in the Rule 1925(b) statement, appellant asserted that the evidence was insufficient to prove first-degree murder because the Commonwealth failed to prove that he acted with malice. (Rule 1925(b)

---

[2] The Commonwealth filed an application for an extension of time to file a brief and submitted a brief to this court before the court ruled on the application. This court grants the application and will consider the brief.

statement, 12/18/17 at 1.)  In his brief, appellant asserts that the evidence was insufficient to establish that he acted with premeditation.[3]

In **Commonwealth v. Packer**, 168 A.3d 161 (Pa. 2017), the Supreme Court of Pennsylvania recently provided a comprehensive explanation of the concept of malice and distinguished it from specific intent. All types of murder are committed with malice while only first-degree murder is intentional.  In **Packer**, our Supreme Court explained that malice is present where a defendant did not have a specific intent to kill but displayed a conscious disregard for an extremely high risk that his actions could cause death or serious bodily harm.  **Packer**, 168 A.3d at 161, 168-169.

As our supreme court explained in **Packer**, there is a distinct difference between malice and specific intent as malice applies to all types of murder and a specific intent to kill is an element only of first-degree murder. Consequently, appellant did not raise the issue that the Commonwealth failed to provide evidence sufficient to prove specific intent in his statement of errors complained of on appeal.  As a result, this issue is waived.

---

[3] First-degree murder is defined as a criminal homicide committed by an intentional killing.  18 Pa.C.S.A. § 2502(a).  An "intentional killing" is defined as "Killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing."  18 Pa.C.S.A. § 2502(d).

Appellant next contends that he must be awarded a new trial, as the weight of the evidence does not establish that he committed first-degree murder.

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact . . . thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.  Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence, . . . rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.
>
> *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) (citations and quotations omitted).  A motion for a new trial based on a challenge to the weight of the evidence concedes the evidence was sufficient to support the verdict.  *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa.Super. 2002).

*Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super. 2007).

Appellant argues that the verdict was against the weight of the evidence because the testimony of Kenyatta Lyons ("Lyons") is suspect because she did not identify appellant as the shooter until over three years after the incident took place, the shooting happened at night, and Lyons had to turn around to look at where the shooting occurred.  (Appellant's brief at

9.)  Appellant also asserts that Janice Fiorvanti's ("Fiorvanti") testimony was meaningless because though she testified that she heard shots and saw a man ride away on a bicycle, she could not identify appellant as the person on the bicycle with 100 percent certainty.  (*Id.*)  He also discounts the testimony of Edward Jaje ("Jaje") because he was unwilling to testify until the courtroom was cleared.  (*Id.* at 9.)  He argues that this questionable evidence is offset by Charlese Lee's testimony that appellant was of good character and had a peaceful reputation.  (*Id.* at 10.)

Appellant appears to cast doubt on the credibility determinations of the jury.  The jury is the fact-finder at trial.  The jury has the authority to accept all, none, or some part of the evidence presented to it.  *See Commonwealth v. Quel*, 27 A.3d 1033, 1038 (Pa.Super. 2011).  This court may not reweigh the evidence and cannot substitute its judgment for that of the finder-of-fact.  It is for the finder-of-fact to make credibility determinations.  *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa.Super. 2009).  Further, although appellant asserts that evidence of good character alone can create reasonable doubt, evidence of good character must be weighed and considered in connection with the other evidence in the case.  *See Commonwealth v. Sandusky*, 77 A.3d 663, 673 (Pa.Super. 2013).

The jury considered this evidence while also considering the evidence that supported the conviction.  Based on the evidence presented, the guilty verdict was not so contrary to the evidence as to shock one's sense of

justice. Appellant raises several issues pertaining to credibility, which is the sole purview of the finder-of-fact. The trial court did not abuse its discretion when it denied appellant's post-trial motion.

Appellant next contends that he must be awarded a new trial because the trial court erred when it cleared the courtroom and deprived appellant of a public trial during Jaje's testimony. (Appellant's brief at 11.)

> [T]he right to a public trial is not absolute; rather, it must be considered in relationship to other important interests. In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary. If the court determines a necessity exists, it may then issue an exclusion order; but the exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing upon the accused's right to a public trial either through its scope or duration. Ultimately, the determination of whether to exclude spectators, as well as the determination of the scope and duration of an exclusion order, must be left to the sound discretion of the trial court because it alone is sufficiently close to the circumstances to apprehend fully the subtleties that may be present.[Footnote 8] Thus, only if a trial court abused its discretion in issuing an exclusion order or in fashioning the order will reversible error be found on appeal. Therefore, we must determine: (1) whether the court abused its discretion in issuing the exclusion order; and (2) if it did not, whether it abused its

> discretion in fashioning the scope and duration of the order.
>
> > [Footnote 8] For example, the trial court is in a position to assess demeanor which in turn may indicate fear, nervousness, and confusion in a witness, where an appellate court is not.
>
> *Commonwealth v. Knight*, 469 Pa. 57, 65-66, 364 A.2d 902, 906-907 (1976).

*Commonwealth v. Conde*, 822 A.2d 45, 49 (Pa.Super. 2003) (other footnotes omitted).

In *Commonwealth v. Penn*, 562 A.2d 833 (Pa.Super. 1989), *appeal denied*, 590 A.2d 756 (Pa. 1991), *cert. denied*, 502 U.S. 816 (1991), a case cited by both parties and the trial court, this court addressed the issue of witness intimidation in terms of the trial court's decision to clear a courtroom. In *Penn*, this court explained:

> Witness intimidation and retaliation against witnesses are serious crimes which the Commonwealth has clear interest in deterring, detecting, and sanctioning. First and foremost, the Commonwealth has an interest in protecting its citizens from intimidation and injury by criminal conduct. Second, the Commonwealth also has an interest in protecting victims and witnesses from intimidation or retaliation because of the indispensable role they play in the operation of the justice system. . . .
>
> . . . .
>
> Succinctly, if the means of justice are to be preserved and the ends of justice protected, courts

> must exercise their discretion so as to dispel any
> belief that intimidation of victims or witnesses will
> serve the ends to which the intimidation is directed.

*Id.*, 562 A.2d at 837 (citations omitted).

Here, Jaje began testifying on direct examination. When asked why he did not tell the police that he recognized the person he saw running to a bicycle and riding away when he looked out his window after he heard gunshots, Jaje replied that he did not tell police because he feared that appellant might retaliate against him if he learned that Jaje implicated appellant in the shooting. (Notes of testimony, 8/10/17 at 111.) The following interchange took place when Jaje was asked whether he could see the person in the courtroom that he saw get on the bicycle after he heard the gunshots:

> Q:    Now, Mr. Jaje, as you sit in this courtroom
>         today, do you see the person you saw that
>         night get onto the bike after you heard the
>         gunshots?
>
> THE COURT:  Can you answer the question?
>
> [Jaje]:  I'm sorry?
>
> THE COURT:  Can you answer the question?
>
> [Jaje]:  Yes, sir.
>
> BY MR. TUMOLO [the prosecuting attorney]:
>
> Q.    Can you just tell us what that person is
>         wearing in the room?
>
> [Jaje]:  (Pause).

Could I have a glass of water, please.

. . . .

[Jaje]:  Could I have a glass of water, please.

THE COURT:  A glass of water, please.

BY MR. TUMOLO:

Q:     Do you need more water?

[Jaje]:  I'm okay.

Q:     Mr. Jaje, can you tell us the person in the courtroom that you just said was the one that got on the bike after you heard gunshots, can you tell us what he's wearing or point to him with your finger?

[Jaje]:  (Pause.)

THE COURT:  Mr. Jaje, are you able to answer the question?

[Jaje]:  I'm sorry?

THE COURT:  Can you answer the question please.

BY MR. TUMOLO:

Q:     Are you nervous right now, Mr. Jaje?

A:     Yes, sir.

Q:     Are you shaking a little bit?

A:     Yes, sir.

Q:     Do you need to take a quick recess or are you okay?

A:     Please.

THE COURT: We'll take a recess.

. . . .

THE COURT: The jury is not in the room. Counsel and the defendant are present.

MR. TUMOLO: Thank you, your Honor.

Your Honor, during the break your court staff who was outside with the witness did inform me the witness said that he would be more comfortable and ready to resume if the courtroom could be cleared. For that reason, given the obvious effect testifying is having on him, I'm going to make that request at this point. That both sides clear the courtroom to allow him to finish his testimony.

MR. MANDELL: And I would strongly object, your Honor. This is a public courtroom. The public is entitled to be in the courtroom. Family and friends of [appellant] are here and they should be allowed to see what takes place.

THE COURT: I want to make sure that the courtroom does remain public. But in a situation such as this, I think it would be appropriate for me to clear the courtroom, both sides. So I'm going to ask the people on both sides please stay in the hallway. We'll call you back when it's permitted. Thank you.

*Id.* at 113-117.

Here, the trial court had the opportunity to assess Jaje's demeanor first hand prior to rendering the decision to clear the courtroom in order to protect Jaje from possible intimidation when Jaje was on the witness stand. This court finds that the trial court did not abuse its discretion when it

- 13 -

ordered that the courtroom be empty during the remainder of Jaje's testimony.[4]

Judgment of sentence affirmed. Application for extension of time to file a brief is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/18

---

[4] Appellant also contends that he is entitled to a new trial where the weight of the evidence does not support premeditation or a specific intent to kill on the part of appellant. (Appellant's brief at 3.) Although appellant lists this issue in his "Questions Presented," he does not address it in the argument section of his brief. Consequently, this issue is waived. **See** Pa.R.A.P. 2119; ***Hinkal v. Pardoe***, 133 A.3d 738, 740-741 (Pa.Super. 2016).