J-A24035-23

2024 PA Super 311

| | | |
|---|---|---|
| PAIEA KALILI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY | : | No. 754 EDA 2023 |
| COMPANY | : | |

Appeal from the Order Entered March 10, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 210700170

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY SULLIVAN, J.: **FILED DECEMBER 26, 2024**

Paiea Kalili ("Kalili") appeals from the grant of summary judgment in favor of State Farm Fire and Casualty Company ("State Farm"). We affirm.

The trial court described the underlying facts:

[Kalili] owns a two[-]story row house . . . in Philadelphia ("the property"). State Farm issued a homeowner's insurance policy to [Kalili] ("the policy")[,] which provided coverage for the property. The policy was in effect at all times relevant to this litigation . . ..

[In October 2020], water began leaking from a pipe inside a wall of the property, damaging the interior walls. [Kalili] contacted Grade A Plumbing (["]Grade A["]) to address the problem. Grade A determined the cause of the leak was a "lead drain line to shower leaking in ceiling of first floor . . . ***corroded due to normal wear and tear.***" Grade A stated that the drain line had to be replaced[,] which required tearing out the wall, the shower, and surrounding pipes to access the damaged pipe. Grade A [] estimated that the costs of these repairs would be $23,500.

[Kalili] also retained Alliance Adjustment Group ("Alliance") to handle his claim and coordinate with State Farm during the adjustment of this loss. Alliance assigned [Kalili's] case to Brian Singer [("Singer")], a licensed public adjuster. [] Singer inspected the loss, assessed the scope of damage, and produced an estimate for the cost of repairs . . .. The initial cost to make the necessary repairs to the property, including tearing out the walls and plumbing to access the damage pipe, was estimated at $18,007.56. Alliance later provided a revised estimate to account for updated pricing, totaling $29,917.15.

Trial Court Opinion, 2/13/23, at 1-2 (emphasis in original, record citations and unnecessary capitalization omitted).

State Farm denied most of the requested coverage, explaining "the portion of the claim that is for repair or replacement of the drain line is not covered." Letter, 11/17/20, at 1. However, State Farm issued a check for $3,133.55 which covered certain of the replacement costs. *See* Trial Court Opinion, 2/13/23, at 2.

Kalili's policy provides in relevant part:

**SECTION I - LOSSES INSURED**

**COVERAGE A – DWELLING**

*We* will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **SECTION I - LOSSES NOT INSURED** or otherwise excluded or limited in this policy. However, loss does not include[,] and *we* will not pay for, any *diminution in value*.

* * * * *

- 2 -

**SECTION I-LOSSES NOT INSURED**

1. **We** will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

* * * * *

g.     wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown;

h.     corrosion, electrolysis, or rust [. . ..]

* * * * *

However, **we** will pay for any resulting loss from items a. through l. unless the resulting loss is itself a Loss Not Insured as described in this Section.

* * * * *

3. **We** will not pay for, under any part of this policy, any loss consisting of one or more of the items below.  Further, **we** will not pay for any loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to, or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

* * * * *

b. defect, weakness, inadequacy, fault, or unsoundness in:

* * * * *

(3)    materials used in repair, construction, renovation, remodeling, grading, or compaction; or

(4)    maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises** [. . ..]

* * * * *

However, **we** will pay for any resulting loss from items 3.a., 3.b., and 3.c., unless the resulting loss is itself a Loss Not Insured as described in this Section.

State Farm Homeowners Policy (the "policy"), 1/10/20, at 12, 14-18

(emphases in original).

The Policy also contains the following provision relevant to this case:

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions, and conditions of this policy.

* * * * *

14. **Tear Out**. If a **loss insured** to Coverage A property is caused by water, steam, or sewage escaping from a system or appliance, **we** will also pay the reasonable cost **you** incur to tear out and replace only that particular part of the **building structure** necessary to gain access to the specific point of that system or appliance from which the water, steam, or sewage escaped.  **We** will not pay for the cost of repairing or replacing the system or appliance itself.  This coverage does not increase the limit applying to Coverage A property.

**Id**. at 8, 11 (emphasis in original).

Lastly, Kalili elected and paid for Option OL of the Policy, which states:

## Option OL - Building Ordinance or Law.

1.    **Coverage Provided**.  The total limit of insurance provided by this option will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage

A limit shown in the **Declarations** at the time of the loss, as adjusted by the Inflation Coverage provisions of this policy. This is an additional amount of insurance and applies to **building structures** on the **residence premises**.

2. **Damaged Portions of Building Structure**. When a **building structure** covered under **COVERAGE A - DWELLING** is damaged by a **loss insured**, **we** will pay for the increased cost to repair or rebuild the physically damaged portion of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the requirement is in effect at the time the **loss insured** occurs.

3. **Undamaged Portions of Damaged Building Structure**. When a **building structure** covered under **COVERAGE A - DWELLING** is damaged by a **loss insured**, **we** will also pay for:

   a. the cost to demolish or clear the site of the undamaged portions of the **building structure** caused by the enforcement of a building, zoning, or land use ordinance or law if the enforcement is directly caused by the same **loss insured** and the requirement is in effect at the time the **loss insured** occurs; and

   b. loss to the undamaged portion of the **building structure** caused by the enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same **loss insured**;

      (2) the enforcement requires the demolition of portions of the same **building structure** not damaged by the same **loss insured**;

      (3) the ordinance or law regulates the construction or repair of the **building structure**, or establishes

zoning or land use requirements at the described premises; and

(4) the ordinance or law is in force at the time of the occurrence of the same *loss insured*; or

c. legally required changes to the undamaged portion of the *building structure* caused by the enforcement of a building, zoning, or land use ordinance or law, if:

(1) the enforcement is directly caused by the same *loss insured*;

(2) the requirement is in effect at the time the *loss insured* occurs; and

(3) the legally required changes are made to the undamaged portions of specific *building structure* features, systems, or components that have been physical damaged by the *loss insured*.

*We* will not pay for legally required changes to specific *building structure* features, systems, or components that have not been physically damaged by the *loss insured*.

*Id*. at 35-36 (emphases in original).

Kalili filed the instant action for breach of contract and bad faith. Following discovery, State Farm moved for summary judgment. Kalili replied.

The trial court granted summary judgment in favor of State Farm. This timely appeal followed.[1]

On appeal, Kalili raises the following issues for our review:

1. Did the trial court err in granting summary judgment on [Kalili's] breach of contract claim[,] where there are disputed issues of fact concerning the application of several policy provisions?

2. Did the trial court err in granting summary judgment on [Kalili's] bad faith claim[,] where there are disputed issues of fact regarding the reasonableness of [State Farm's] adjustment practices during the claim?

Kalili's Brief at 3 (unnecessary capitalization omitted).

Both of Kalili's issues challenge the trial court's grant of summary judgment based on the language of the policy. Our standard of review of an order granting or denying summary judgment is well-settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

***Siciliano v. Mueller***, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted).

---

[1] The trial court did not order Kalili to file a concise statement of errors complained of on appeal. The trial court subsequently issued an opinion adopting its earlier opinion granting summary judgment. ***See*** Pa.R.A.P. 1925(a).

"The interpretation of the contractual language in an insurance policy is a pure issue of law which we review under a *de novo* standard." ***Kramer v. Nationwide Property & Casualty Ins. Co.***, 271 A.3d 431, 435 n.1 (Pa. Super. 2021), ***reversed on other grounds***, 318 A.3d 1031 (Pa. 2024). "[W]e are not bound by the trial court's conclusions of law[] but may reach our own conclusions." ***Kline v. Traveler's Personal Sec. Ins. Co.***, 223 A.3d 677, 686 (Pa. Super. 2019). The three elements needed to establish breach of contract are the existence of a contract, a breach of duty imposed by the contract, and damages. ***See Sullivan v. Chartwell Inv. Partners, LP***, 873 A.2d 710, 716 (Pa. Super. 2005) (citations omitted).

An insurance policy is not intended to cover every conceivable loss or damage to an insured item. ***See Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.***, 311 F.3d 226, 234 (3d Cir. 2002).[2] Indeed, a basic tenet of insurance law is an insurance policy is only intended to provide coverage for unanticipated, unforeseen, and accidental risks. ***See id***. at 235. An insurance policy is never intended to cover known, anticipated, and foreseen risks that are certain to occur. ***See id***. In this regard, normal wear and tear of any insurable item is always anticipated, foreseen, and predictable. ***See Chartis Prop. Cas. Co. v. Inganamort***, 953 F.3d 231, 235 (3d Cir.

---

[2] "We recognize [federal court] decisions are not binding precedent on this Court. Nevertheless, we may consider federal court decisions, and opinions of other states, as persuasive authority." ***Commonwealth v. Lang***, 275 A.3d 1072, 1083 (Pa. Super. 2022) (citations omitted).

2020) (stating an insured must show the loss occurred by chance). Thus, the risk of loss remains on the owner of the insured item to maintain the insured item or do necessary upkeep to prevent loss or damage due to normal wear and tear. *See id*. at 236 n. 9 (concluding allowing coverage for damages resulting from failure to maintain property "would effectively convert" first-party property insurance policies "into general maintenance contracts"); *see also Port Auth.*, 311 F.3d at 236.

In his first issue, Kalili claims the trial court erred in granting summary judgment "because there are disputed facts concerning the wrongful denial of coverage under several policy provisions."[3] Kalili's Brief at 14 (bolding and unnecessary capitalization omitted); *see id*. at 14-20.

The policy provides coverage for "accidental direct physical loss to the property" which is not "excluded or limited" by the terms of the policy. Policy, 1/10/20 at 12. The policy specifically excludes coverage for a loss that "consists of, or is directly and immediately caused by . . . wear, tear . . . or mechanical breakdown." *Id*. at 15.

The trial court determined the Tear Out provision did not apply because the burst pipe was caused by normal wear and tear. *See* Trial Court Opinion,

---

[3] While Kalili claims there are disputed issues of fact, his argument centers around the trial court's interpretation of the policy. Kalili's Brief at 16-20. The interpretation of the terms of a contract are a matter of law for the court, not a question of fact for the jury. *See Toppy v. Passage Bio, Inc*., 285 A.3d 672, 682 (Pa. Super. 2022) (noting contract interpretation is a question of law); *Kramer*, 271 A.3d at 435 n.1.

2/13/23, at 8-9. It rejected Kalili's contention that "wear and tear" was an ambiguous phrase and "constituted a genuine issue of material fact that preclud[ed] summary judgment." *Id*. at 9.

Kalili contends the trial court erred in determining State Farm did not breach the insurance contract. *See* Kalili's Brief at 14-20. However, Kalili concedes the policy provides *no coverage* for the repair and replacement of the burst pipe itself because it failed due to normal wear and tear. *See id*. at 11. Kalili nevertheless contends the policy affords coverage for *all* the remaining repair costs under the Tear Out provision and the Ordinance or Law endorsement.[4]

The Tear Out provision of the policy provides coverage for the cost to tear out a small portion of the home if there is a "loss insured" caused by water escaping from a system. Policy, 1/10/20, at 11. This coverage is narrow, limited to "the reasonable cost" necessary "to tear out and replace *only that particular part of the building structure necessary to gain access to the specific point of that system* . . . from which the water . . .

---

[4] Kalili also maintains the trial court erred by failing to consider the Ensuing Loss and Access provisions of the policy. *See* Kalili's Brief at 15-16. However, other than making this assertion, Kalili does not discuss the provision in the argument section of his brief. *See id*. at 16-20. Accordingly, Kalili waived this argument. *See Hinkal v. Pardoe*, 133 A.3d 738, 740 (Pa. Super. 2016) (*en banc*) (citing Pa.R.A.P. 2119 in finding waiver based on appellant's failure to address issue in the argument section of her brief).

escaped." ***Id***. (emphasis added). The Tear Out provision expressly states the insurer "will not pay for the cost of repairing or replacing the system . . . itself." ***Id***. Thus, under the plain language of the policy, State Farm is only obligated to cover the cost to tear out the part of the home to get to the burst pipe where the water "escaped." ***Id***.

As noted, the policy provides coverage for the resulting damage caused by the burst pipe itself. ***See id***. Here, the burst pipe constituted a covered "loss insured," and the policy provided coverage to repair the resulting damage to the foyer ceiling and walls. ***See*** Trial Court Opinion, 2/13/23, at 2. The "loss insured" caused by the escape of water triggered the Tear Out provision. However, that provision, as quoted above, clearly states the policy covers only the tear out of the part of the structure necessary to gain access to the specific place where the water escaped, *i.e.* the burst pipe itself. Thus, the Tear Out provision does not obligate State Farm to pay for Kalili to tear out the entire piping system in his bathroom, which was not the "loss insured". Policy, 1/10/20, at 11. Notably, the Tear Out provision specifically states the insurer "will not pay for the cost of repairing or replacing the [pipe] system . . . itself." ***Id***.

Kalili provides no legal support for his argument that the Tear Out provision should be broadly interpreted to require State Farm to pay for the cost to tear out all the pipes in Kalili's undamaged sections of the bathroom. ***See*** Kalili's Brief at 16-18. Thus, for the reasons discussed above, the trial

court did not err in finding State Farm did not breach the Tear Out provision of the policy.

Kalili also asserts the Ordinance or Law endorsement obligates State Farm to pay for the cost to replace all the lead pipes to bring the house up to code. *See* Kalili's Brief at 18-19. Again, Kalili fails to cite to pertinent legal authority to support this position. The policy contains a general exclusion which provides that it does **not** cover any loss resulting from the inadequacy of materials used in construction. *See* Policy, 1/10/20, at 17. This language operates to exclude coverage to bring the lead pipes up to code. *See id*.

Kalili purchased extra coverage through an Ordinance or Law endorsement which provides some additional coverage for specified losses in certain circumstances. *See id*. at 35-37. The endorsement provides coverage if there was a "loss insured" and the repairs for that loss implicated new or changed laws, building codes, or zoning requirements. *See id*. at 36. However, the endorsement provides no coverage for a resulting loss if the resulting loss is specifically excluded by the policy. *See id*. at 35-37. Here, the "loss insured" is the damage to the foyer ceiling and walls; hence, the additional coverage provided by the Ordinance or Law endorsement provides coverage for any ordinance or building code requirements applicable to the repair of the foyer walls and ceiling. *See id*. No ordinance or building codes apply to the foyer walls or ceiling so the added coverage provided by the endorsement does not apply. *See id*. Nothing in the plain language of the

endorsement applies to Kalili's obligation to replace the lead pipes in the bathroom since they are now in violation of applicable building codes. ***See*** Kalili's Brief at 18-19.

To activate the endorsement, the enforcement of the ordinance or law must be triggered by the ***same*** "loss insured" that caused damage to the structure. ***See*** Policy, 1/10/20, at 36. Here, the need to replace the lead pipes is not a "resulting loss" of a "loss insured". The only "loss insured" is the damage to the foyer ceiling and walls, and that covered loss was not the cause of the inadequacy or need to replace the lead pipes. The burst pipe caused the need to replace the pipes and is not a "loss insured" because of the wear and tear and corrosion exclusions. ***See id***. at 15. Thus, no relief is due under the Ordinance or Law endorsement of the policy.

For the reasons discussed above, Kalili is not entitled to further coverage under the Tear Out provision or the Ordinance or Law endorsement of the policy. Thus, the trial court did not err in granting summary judgment on the breach of contract claim.

In his second issue, Kalili contends the trial court erred in granting summary judgment on his bad faith claim.[5] ***See*** Kalili's Brief at 20-24.

"Bad faith" has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy." ***Terletsky v. Prudential Property and Cas. Ins.***

_____

[5] We note the trial court did not address Kalili's bad faith claim in its opinion.

- 13 -

***Co.***, 649 A.2d 680, 688 (Pa. Super. 1994). A specific statute addresses an insurer's bad faith. ***See*** 42 Pa.C.S.A. § 8371(3). To prevail on a bad faith claim under that statute:

> a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim. Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong.

***Rancosky v. Washington National Insurance Company***, 170 A.3d 364, at 377 (Pa. 2017). An insurer may also be found liable for bad faith conduct if the insurer has violated the Unfair Insurance Practices Act by failing to properly investigate the claim or not negotiating in good faith. ***See O'Donnell ex. rel. Mitro v. Allstate Ins. Co***., 734 A.2d 901, 906 (Pa. Super. 1999).

Kalili contends State Farm acted in bad faith when it applied an unreasonably narrow construction of the Tear Out provision to limit its liability, ***see*** Kalili's Brief at 23; and that it lacked a reasonable basis to deny coverage under the Ordinances or Law endorsement, ***see id***. at 24.

Kalili has not presented a cogent legal argument on this issue. He offers only two-and-one-half pages of discussion of the general standards for bad faith claims, ***see id***. at 20-23. followed by three paragraphs where Kalili lists the above-cited issues. ***See id***. at 23-24. He fails to apply the cited law to

the facts of this case and does not explain how State Farm unreasonably interpreted the policy or why this constitutes bad faith. *See id*. at 23-24. As we have explained:

> [t]he Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (citations, brackets, and quotation marks omitted). Thus, he has precluded this issue from appellate review.

Even if not waived, Kalili is not entitled to relief. A party alleging bad faith must meet a very high standard. *See Rancosky*, 170 A.3d at 377. Kalili fails to show by clear and convincing evidence that State Farm "did not have a reasonable basis for denying benefits under the policy" and that it "knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id*. To the extent that we can determine the basis of Kalili's bad faith argument, he asserts State Farm acknowledged there was a "loss insured" and that it owed benefit under the Tear Out provision but denied benefits under the Ordinance or Law provision because there was no "loss insured." Kalili's Brief at 24.

As explained above, State Farm had a reasonable basis to limit coverage under the Tear Out provision to the "particular part of the building structure necessary to gain access to the specific point of that system . . . from which the water . . . escaped." Policy, 1/10/20, at 11. The use of the words "particular", "specific", and "necessary" underscores the narrow scope of coverage provided and the limited area subject to tear out coverage. There is simply nothing in the Tear Out provision to support Kalili's suggestion he was entitled to coverage for the replacement of much of his bathroom and the pipes. *See id*. Thus, State Farm had a reasonable basis for limiting coverage under the Tear Out provision to the area necessary to access the burst pipe, and for denying coverage for any additional tear out costs.

State Farm also had a reasonable basis to deny coverage for the lead pipe replacement under the Ordinance or Law endorsement. Here, the need to replace the lead pipes was not caused by the sole "loss insured" (*i.e.*, the damage to the foyer ceiling and walls). Instead, the need to replace the lead pipes arose solely from the pipe which burst due to wear and tear, which was not a "loss insured."

Kalili has failed to point to any specific evidence of bad faith on the part of State Farm, relying instead on conclusory rhetoric. *See* Kalili' Brief at 23-24. We see nothing in this case that indicates anything more than a normal disagreement between the parties over the value of Kalili's claim. That is not sufficient to show bad faith. *See Johnson v. Progressive Ins. Co.*, 987

A.2d 781, 785 (Pa. Super. 2009). Even if not waived, Kalili's second issue would not merit relief.

For the reasons discussed above, we find Kalili's claims are either meritless or waived. Accordingly, we affirm the trial court's grant of summary judgment.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/26/2024